IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CLAUDIA Y. F. FITZPATRICK, Debtor. ) | |
| ) | |
| ROBERT LEE SMITH, ) | |
|     Appellant, ) | |
| ) | CIVIL ACTION NO. 2:06CV281-MHT |
| v. ) | |
| ) | |
| CLAUDIA Y. F. FITZPATRICK, ) | |
| ) | |
|     Appellee. ) | |

RECEIVED
2006 MAY -4 P 2:11
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
BANKRUPTCY ADVERSARY CASE NO. 05-03030

BRIEF AND ARGUMENT OF:

ROBERT LEE SMITH
Appearing pro se

ADDRESS:

ROBERT LEE SMITH
P.O. BOX 5145
MONTGOMERY, AL 36103
334-263-6310

# TABLE OF CONTENTS

**Pages**

| | |
|---|---|
| TABLE OF AUTHORITIES | 3 |
| STATEMENT OF JURISDICTION | 3 |
| STATEMENT OF THE ISSUES | 3 |
| STANDARD OF APPELLATE REVIEW | 3 |
| STATEMENT OF THE CASE | 4 |
| STATEMENT OF THE FACTS | 5 |
| ARGUMENT | 8 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

*Cases* *Page*

AT&T Universal Card Services v. Mercer (In re Mercer),
246 F.3d 391 (5th Cir.2001) — 9

Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc.
(In re Dixie Broadcasting, Inc.), 871 F.2d 1023 (11th Cir. 1989) — 3,4

Castro v. Zeller (In re Zeller), 242 B.R. 84 (Bankr.S.D.Fla.1999) — 12

*In re D'Agnese*, 86 F.3d 732, 734-35 (7th Cir.1996) — 12

Mirage-Casino Hotel v. Simpson (In re Simpson),
319 B.R. 256, 260 (Bankr.M.D.Fla.2003) — 11

Schweig v. Hunter (In re Hunter), 780 F.2d 1577(11th Cir.1986) — 11

Rush v. JLJ Inc. (In re JLJ Inc.), 988 F.2d 1112 (11th Cir. 1993). — 4

*Statutes*

11 U.S.C. §523(a)(2)(A) — 8

Fed. R. Bankr.P. 8013 — 4

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 15 U.S.C. §158.

## STATEMENT OF THE ISSUES

Whether the Bankruptcy Court erred in its holding that Mrs. Fitzpatrick's silence could not have been "actionable within the context of §523(a) (2) (A)".

## STANDARD OF APPELLATE REVIEW

This Court has appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(l). A judgment granting or denying relief from the

automatic stay is an appealable final order. *Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.)*, 871 F.2d 1023, 1026 (11th Cir.1989). This Court reviews the bankruptcy court's legal conclusions de novo and the bankruptcy court's findings of fact for clear error. *Fed. R. Bankr.P.* 8013; *Rush v. JLJInc. (In re JLJInc.)*, 988 F.2d 1112, 1116 (11th Cir. 1993).

## STATEMENT OF THE CASE

This is appeal from an Adversary Proceeding filed by the Appellant, Robert Lee Smith (hereafter, Mr. Smith), in the United States District Court for the Middle District of Alabama Northern Division against the Appellee, Claudia Y. F. Fitzpatrick, (hereafter, Mrs. Fitzpatrick). Mr. Smith filed a complaint alleging that his claim against Mrs. Fitzpatrick was not dischargeable because under 11 U.S. C. § 523 it was founded on fraud which resulted in willful and malicious injury to him. Mr. Smith sued Mrs. Fitzpatrick in the Circuit Court of Montgomery County, Alabama to collect the debt owed him. Unknown to him at the time, Mrs. Fitzpatrick had filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, and after being served with the state court action, amended her petition to include Mr. Smith as a, creditor.

On May 5, 2005, Mr. Smith filed a complaint against Mrs. Fitzpatrick to determine the dischargeability of his claim against her. (Doc 1)

On May 16, 2005 summons was served on Mrs. Fitzpatrick. (Doc 5

On June 02, 2005, Mrs. Fitzpatrick through her attorney of record filed an answer and an amended answer to the complaint denying the allegations contained in the complaint. (Doc. 6 & 7).

4

On January 19, 2006, an order was served on all the parties setting a trial date for January 31, 2006. (Doc 16).

On February 9, 2006, the Bankruptcy court entered a memorandum decision/opinion and judgment in favor of the appellee. (Doc. 18 & 19).

On February 15, 2006, a Motion for Jury Trial (New Trial) was filed by Mr. Smith. (Doc. 22).

On February 16, 2006, Notice of Appeal was filed by Mr. Smith. (Doc. 23).

On February 21, the Bankruptcy Court entered a memorandum decision/opinion and order denying the motion. (Docs. 26 & 27).

## STATEMENT OF THE FACTS

Below is the Bankruptcy Court finding of the facts of this case as written in its opinion.

"At trial Mr. Smith presented wide ranging testimony and argument relating to certain events which occurred during the landlord-tenant relationship between himself as landlord and the Fitzpatricks. However, because the Court's focus here is much narrower, the Court will recite the history of this relationship only to the extent it is relevant to the Plaintiff's nondischargeability complaint pursuant to 11 U.S.C. § 523(a)(2)(A)6. In March of 2002, Mr. and Mrs. Fitzpatrick leased a residence from Mr. Smith located at 964 Excelsior Drive, Montgomery, Alabama 36117. (PL's Ex. 1). Eventually, the parties ended up multiple times in Circuit Court, Montgomery County. (PL's Ex. 4). The specific procedural history of the underlying state court proceedings are not germane to the instant § 523(a)(2)(A) determination. Mr. Smith initiated an eviction action against the Fitzpatricks on November 6, 2003 for nonpayment of rent. (PL's Ex. 2).

"At the hearing on that action, which took place on December 4, 2003, the issue centered on rent receipts, which Mr. Fitzpatrick represented, was advance payments on the rent during the

5

months of March, April, and May, 2003. Mr. Smith asserts that Mrs. Fitzpatrick was present at that hearing and stood silent while her husband represented to the circuit court that they had made advance payments, knowing that was a false representation. It is this allegation which forms the basis of Mr. Smith's § 523(a)(2)(A) claim against Mrs. Fitzpatrick. The Court notes that from the initial hearing, which took place on December 4, 2003, to September 2004, several hearings occurred at the circuit court level involving the rent receipt issue, which became interwoven with Mr. Smith's attempts to evict the Fitzpatricks. The December 4, 2003 hearing was the only hearing in which Mrs. Fitzpatrick appeared. Ultimately, a final hearing on this matter, a District Court appeal taken by the Fitzpatricks, was heard on September 7, 2004 before Circuit Court Judge Truman M. Hobbs, Jr. (Pl's Ex. 4). By way of an Order, dated September 10, 2004, disposition on this matter was entered in favor of Mr. Smith. (Pl's Ex. 5)."

The Bankruptcy Court either overlooked or gave short thrift to the testimony and response to interrogatories of Mrs. Fitzpatrick's participation and scheme to commit a fraud on Mr. Smith.

Mrs. Fitzpatrick's testified at the Adversary hearing that she was present at the December 4, 2003, hearing in state court and but did not testify or make any statements regarding the receipts (T. p. 35). She testified that she was aware that her husband had appealed the eviction action in the state court. (T. p. 36). How would she know of the appeal if they were not communicating? It is undisputed that notice of the eviction action was provided to both Mrs. Fitzpatrick and her husband. (T. p. 37). How could she not know? On cross examination Mrs. Fitzpatrick stated that she did not communicate at all times with her husband in regards to the payment of the rent which was in conflict with her response to the interrogatories in which she

stated that she did not communicate with her husband in regards to coordinating in payment of the rent. On cross-examination, Mrs. Fitzpatrick testified as follows:

"Q. Mrs. Fitzpatrick, at any time did you communicate or coordinate with your husband regarding the payment of the rent?

"A. No, not all the time.

"Q. beg your pardon.

"A. No, not all the time.

"Q. In an earlier interrogatory when I asked you that question, you gave an absolute no, you did not communicate or coordinate with him regarding the rent.

"A. Not all the time. I mean, it was just some time, not the majority of the time." (T.p. 38)

Also on cross-examination, Mrs. Fitzpatrick admitted that some of the receipts that she received were introduced in the first hearing at which she was present were used to support the advance payment claims. (T. p. 39). On cross-examination, Mrs. Fitzpatrick stated that she would pay the rent without ever talking to her husband. (T. p. 40).

In response to interrogatories, Mrs. Fitzpatrick stated the following:

"5. Mrs. Fitzpatrick did you at time appear in any court of law with your husband Michael D. Fitzpatrick before a judge, where rent receipts for the property at 964 Excelsior Drive, Montgomery, Alabama 36117 were presented into evidence and represented those receipts as evidence of advance payments on the rent.
5. *no I never claimed the payments were advance payments.* (Response to Second Set of Interrogatories)"

6. Mrs. Fitzpatrick you stated in response to my first set of interrogatories that you now believe you made "two or three additional payments" in the year 2002. When you use the words 'additional payments" are you referring to other regular rent payment or payments on future month's rent, as in paid ahead rent?

6. *regular rent payments. March and April of 03 - in the amount of $650. I believe my husband did claim that the payments in March. My husband was handling the issues in front of Judge Givan. All issues of the lease, the receipts and the trial was between Mr. Smith and my husband.* (Response to Second Set of Interrogatories)"

7

A salient fact the Bankruptcy Court did not refer to was the evidence introduced by Mr. Smith regarding Mr. Fitzpatrick's credibility. In the state court proceeding, Circuit Judge Truman Hobbs after hearing the testimony of Mr. Smith and Mr. Fitzpatrick noted in his order that Mr. Fitzpatrick was not a credible witness. (Exhibit 5).

**ARGUMENT**

This case is based on the reliance by Mr. Smith and the Bankruptcy Court's interpretation of 11 U.S.C. §523(a) (2) (A) which provides as follows:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—.

"(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

"(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

"(B) use of a statement in writing—

"(i) that is materially false;

"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity..."

***Whether the Bankruptcy Court erred in its holding that Mrs. Fitzpatrick's silence could not have been "actionable within the context of §523(a) (2) (A)".***

In its opinion, the Bankruptcy Court states that the law has not generally held a party liable for nondisclosure absent a duty to disclose. (Judge Opinion, p. 1) A basis for the Bankruptcy Court's interpretation of the evidence that Mrs. Fitzpatrick was not knowledgeable

8

about the payment of rent, the issuing of receipts, and that her husband was the person primarily engaged in interaction with Mr. Smith. (Judge Opinion, p. 5.).

This position is in direct conflict with *AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir.2001) (en banc) ("When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an overt act is not required."). Mrs. Fitzpatrick testified that she paid rent to Mr. Smith, and she received receipts from him. Mr. Smith introduced evidence in Court in the form of a transcript of a hearing held behold, State Court Judge Truman Hobbs, Jr., who listen to the testimony of Mrs. Fitzpatrick's husband, Mr. Fitzpatrick testified that his wife in effect had no dealing with Mr. Smith. Judge Hobbs in his Order in favor of Mr. Smith stated that Mr. Fitzpatrick was not a credible witness, Because of the above, Mr. Smith submits that it is evident that a couple of significant weaknesses—both factual and legal— exist with the position posited by the Bankruptcy Court. Mrs. Fitzpatrick was more than a passive party in the transaction with Mr. Smith in that she paid rent to him and collected the receipts, and her husband was not found to be a credible witness.

Mrs. Fitzpatrick claimed to have made three payments and received receipts, which she gave to her husband, and he then presented those receipts in the District Court of Montgomery County, Alabama when she were in attendance. The offering of those receipt and Mrs. Fitzpatrick's silence concerning those receipts when she had an opportunity to correct the false statements constituted a material issue as they fell within the ambit of a fraudulent action and/or misrepresentation in the statute on which the adversary proceeding were based.

Mrs. Fitzpatrick stated in the adversary proceeding that all her rent receipts were for regular rent payments not advanced payments and that she never made a late payment.

Mrs. Fitzpatrick stated that she and her husband lived in the rental property as husband and wife at all times before they was evicted, which fact should be considered in conflict with her statement that she did not coordinate or communicate with her husband before or after the rent payments were made by her.

In discovery, the following was the interrogatories to Mrs. Fitzpatrick and the responses of Mrs. Fitzpatrick to the interrogatories.

"5. Mrs. Fitzpatrick did you at time appear in any court of law with your husband Michael D. Fitzpatrick before a judge, where rent receipts for the property at 964 Excelsior Drive, Montgomery, Alabama 36117 were presented into evidence and represented those receipts as evidence of advance payments on the rent.

"5. no I never claimed the payments were advance payments.

"6. Mrs. Fitzpatrick you stated in response to my first set of interrogatories that you now believe you made "two or three additional payments" in the year 2002. When you use the words 'additional payments" are you referring to other regular rent payment or payments on future month's rent, as in paid ahead rent?

"6. regular rent payments. March and April of 03 - in the amount of $650. I believe my husband did claim that the payments in March. My husband was handling the issues in front of Judge Givan. All issues of the lease, the receipts and the trial were between Mr. Smith and my husband." (Response to Second Set of Interrogatories)

The Bankruptcy Court stated its' opinion that "There are other hurdles that Mr. Smith has failed to overcome in an attempt to make a § 523(a) (2) (A) claim."It is the duty of the creditor seeking to establish non-dischargeability to show essentially that the debtor acted with intent to deceive the creditor and that the creditor relied to his detriment upon the assertions by the

debtor." (Judge's Opinion, p. 6). The Court statement on this crucial issue is misplaced because duplicate receipts was requested of Mr. Smith, and had he known that they would be used to support a claim of advance rent payments he would not have provided such to the Fitzpatricks, thus that is the reliance. Mrs. Fitzpatrick in her testimony and her response to Mr. Smith's interrogatories did disavow any knowledge of her husband actions in regards to the receipts. We contend that the fact that Mrs. Fitzpatrick was more than a passive party. Her testimony and the fact that her husband was not a credible witness cast doubts on her credibility, and her silence was at trial was a material fact. Fraud for purposes of § 523(a) (2) (A) may exist as a concealment of a material fact. *Mirage-Casino Hotel v. Simpson (In re Simpson)*, 319 B.R. 256, 260 (Bankr.M.D.Fla.2003).

The Eleventh Circuit set out the elements of proof required under section 523(a) (2) (A) as follows: To preclude the discharge of a particular debt because of a debtor's false representation, a creditor must prove that: the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation. The debtor must be guilty of positive fraud or fraud in fact, involving moral turpitude or intentional wrong and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986).

Section 523(a)(2)(A) deals with false representations not involving the financial condition of the debtor made to a creditor that induced the creditor to provide money, property, services or credit to the debtor A false representation, on the other hand, requires an express misrepresentation by a debtor.. Nondisclosure or a false statement made in reckless disregard for

the truth can be construed, as a misrepresentation. A debtor's silence regarding a material fact may constitute a false representation. "[A]bsent a duty imposed by law to disclose facts because of a peculiar relationship of the parties or a showing that a debtor has willfully concealed or omitted material facts, mere silence and failure to disclose falls short of establishing a false representation." *Castro v. Zeller (In re Zeller)*, 242 B.R. 84, 87 (Bankr.S.D.Fla.1999).

Contrary to the opinion by the Bankruptcy Court, Mrs. Fitzpatrick was more than a passive bystander in the transaction with Mr. Smith. On cross-examination in the Bankruptcy Court, she testified as follows:

"Q. Mrs. Fitzpatrick, at any time did you communicate or coordinate with your husband regarding the payment of the rent?

"A. No, not all the time.

"Q. beg your pardon.

"A. No, not all the time.

"Q. In an earlier interrogatory when I asked you that question, you gave an absolute no, you did not communicate or coordinate with him regarding the rent.

"A. Not all the time. I mean, it was just some time, not the majority of the time." (T.p. 38)

The above testimony taken in conjunction with the creditability issue of her husband, should lead this Court to question the creditability of Mrs. Fitzpatrick.

This court should consider the holding in *In re D'Agnese*, 86 F.3d 732, 734-35 (7th Cir.1996) in which the Court stated that "even though a satisfactory explanation must be convincing about this lack of concealment, the focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation. Mrs. Fitzpatrick explanation of her actions in (silence) in regards to the issues

12

in the state court proceeding was not adequate given her claims in the adversary proceeding that she paid some of the rent payments, and she gave her husband the receipts which were entered into evidence at the first state court proceeding which she and her husband attended on December 4, 2003. The rent receipts of March and April 2003 were material in fact to the state court proceeding and demanded her response as an active participate/recipient concerning the rent receipts presented to the state court during her appearance.

## CONCLUSION

In conclusion, the judgment of the Bankruptcy Court should be reversed because it was founded on facts that contrary to that Court's interpretation the facts would support a finding of fraud that would render the claim against Mrs. Fitzpatrick non-dischargeable.

Respectfully submitted,

*/s/ Robert Lee Smith*
ROBERT LEE SMITH
P.O. BOX 5145
MONTGOMERY, AL 36103
334-263-6310

## CERTIFICATE OF SERVICE

I, Robert Lee Smith hereby certify that on this the 4 day of May 2006, I served a true and correct copy of the above brief on Claudia Y. F. Fitzpatrick, the Appellee-Debtor by a mailing a copy of the same to her at her address of 314 Iris Lane, Montgomery, Alabama 36105, postage prepaid and properly addressed.

*/s/ Robert Lee Smith*
ROBERT LEE SMITH